UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELVIS AARON PACK, <br><br> Plaintiff, <br><br> v. <br><br> JOHN GALIPEAU, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-491-RLM-MGG |

OPINION AND ORDER

Elvis Aaron Pack, a prisoner without a lawyer, filed a complaint. ECF 2. the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Mr. Pack contracted COVID-19 while incarcerated at the Westville Correctional Facility. He has sued John Galipeau (Warden of the Westville Correctional Facility), Tom Hanlon (Warden of the Reception and Diagnostic Center), Health Care Administrator Dorothy Livers, Wexford Medical of Indiana, Grievance Specialist John Harvil, and eight unknown correctional officers for a variety of wrongs.

In mid-April of 2020, Mr. Pack was having chest pain, difficulty breathing, headaches, loss of sense of taste and smell, and throbbing behind his eyes. He filed numerous requests for health care but received no response. Around 9:00 p.m. on April 19, a correctional officer noticed that Mr. Pack was shaking and pale. The officer alerted medical staff. At 7:00 a.m. the next day, a member of the medical staff checked Mr. Pack's vitals. His oxygen levels didn't register, and the staff member indicated that they would return later to check his oxygen levels again. When the oxygen levels were checked a second time, they still didn't register. The doctor was notified and ordered a COVID-19 test, which was administered around 3:30 or 4:00 p.m. He received the results that night: Mr. Pack was positive for COVID-19. He was moved to solitary confinement for quarantine purposes.

Mr. Pack suffers from C.O.P.D., and he was anxious about his condition. No medical staff checked in on him or provided him with any information. No inmates or staff were nearby so that he could call for help if needed. On April 22, Mr. Pack and 37 other inmates who had tested positive for COVID-19 were moved to the B2-South dorm. He wasn't provided any medication to ease his suffering. He didn't have any over-the-counter medication in his possession because his commissary goods had been confiscated when he was placed in quarantine. It would have been pointless to order medication from commissary because orders are placed only every two weeks and they take two more weeks to arrive. He submitted more Health Care Request Forms while in quarantine, asking to see the doctor. Mr. Pack's complaint states that, at some point while quarantined, Dorothy Livers said to the quarantined inmates: "You

guys need to stop filling out Health Care Request Forms to see the doctor, that there was nothing that neither I, (the Defendant Dorothy Livers) nor the Doctor could do to provide care for any of us, we were either going to live or die and we would know more about that in the next 2 weeks." ECF 2 at 6.

Mr. Pack's mother called the prison repeatedly. In response to those calls, Dorothy Livers sent a member of the medical staff to take Mr. Pack's temperature, blood pressure, and oxygen levels on May 11. Mr. Pack said he was feeling better (even though that wasn't true) because he hoped to ease his mother's anxiety. On May 19, Mr. Pack was moved back to general population. Mr. Pack wasn't tested for COVID-19 again to confirm he was negative before he was returned to general population.

Under the Eighth Amendment, inmates are entitled to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring

3

even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 965 (7th Cir. 2019), nor ar0e they entitled to "the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." Walker v. Wexford Health, 940 F.3d at 965 (citation and internal quotation marks omitted).

Warden Galipeau, Tom Hanlon, and John Harvil weren't personally involved in providing Mr. Pack with medical care. Defendants cannot be held individually liable based solely on their supervisory position over others or their status as an employer. Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id*. at 596. But giving Mr. Pack the inferences to which he is entitled at this early stage, he has stated an Eighth Amendment claim against Dorothy Livers.

Mr. Pack asserts that Warden Galipeau and Warden Hanlon should be held liable because they let two bus loads of inmates that had tested positive for COVID-19 be transferred from the Reception and Diagnostic Center to Westville Correctional

Facility, and Warden Galipeau accepted Allen County Jail inmates who had tested positive for COVID-19. Mr. Pack alleges that Warden Galipeau didn't place these inmates in quarantine and instead allowed them to be placed in general population all around the facility. Accepting Mr. Pack's allegations as true and giving him the inferences to which he is entitled at this stage of the proceedings, Mr. Pack has stated a claim for deliberate indifference to his safety against Warden Galipeau, but it is the alleged failure to quarantine these inmates that might subject Warden Galipeau to potential liability, not the transfer of COVID-19 positive inmates. As such, the claim against Warden Tom Hanlon must be dismissed.

Mr. Pack also faults Warden Galipeau for a practice of placing two inmates in a single cell, which didn't allow for social distancing. It is unclear if Mr. Pack was housed in a cell with another inmate before his COVID-19 diagnosis, but he alleges that he was placed in a cell with an inmate that had also tested positive for COVID-19 after he was diagnosed with COVID-19. While social distancing would be ideal, it is not always possible in a correctional environment. *See* Mays v. Dart, 974 F.3d 810, 819-20 (7th Cir. 2020) (reversing district court's preliminary injunction regarding social distancing at jail under Fourteenth Amendment standard because the district court focused its analysis on the benefits of social distancing without considering the other measures the sheriff had taken to combat the spread of COVID-19). Mr. Pack doesn't allege that he became infected with COVID-19 due to the double bunking policy, and it is unclear how he could have been harmed by sharing a cell with an

5

inmate that was also COVID-19 positive after he had been diagnosed with COVID-19. These allegations don't state a claim on which relief can be granted.

Mr. Pack also faults Warden Galipeau for not doing more to stop the spread of COVID-19. He complains that Warden Galipeau didn't pass out masks to inmates and staff until mid-April, shortly before he contracted COVID-19. Furthermore, he contends Warden Galipeau could have ordered that laundry services be offered more frequently and done more to enforce social distancing in the chow hall. "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (quotation marks omitted). Deliberate indifference imposes a "high hurdle," for it requires a showing "approaching total unconcern for the prisoner's welfare." Rosario v. Brawn, 670 F.3d 816, 821 (7th Cir. 2012). Neither negligence nor gross negligence is enough. *Id.* "[T]he mere failure . . . to choose the best course of action does not amount to a constitutional violation." Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002). This complaint establishes that Warden Galipeau was taking steps to protect inmates from COVID-19: he provided staff and inmates with masks and – with the exception of the incoming arrivals very early on in the pandemic - he directed that inmates identified as positive for COVID-19 be quarantined. "That a response did not avert the risk does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances." Giles v. Tobeck, 895 F.3d 510, 513 (7th Cir. 2018); *see also* Money v. Pritzker, 453 F. Supp. 3d 1103, 1131-1132 (N.D. Ill. 2020) (denying inmates' preliminary injunction motion because defendants

6

listed steps they were taking in response to COVID-19 and "[t]he record simply does not support any suggestion that Defendants have turned the kind of blind eye and deaf ear to a known problem that would indicate total unconcern for the inmates' welfare" (quotation marks omitted)); Coates v. Arndt, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contacting COVID-19 . . . ."). These allegations don't state a claim on which relief can be granted.

Mr. Pack has sued Wexford Medical of Indiana, a private company that was under contract to provide medical care to inmates housed at Indiana State Prison. A private company performing a state function can be held liable to the same extent as a municipal entity under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). See Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." Calhoun v. Ramsey, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id*. Mr. Pack alleges that Wexford had a policy of denying medical care, but he offers no specifics about this alleged policy. And he argues that Wexford had a custom of placing newly arriving inmates in close proximity to inmates recovering

7

from COVID-19. Such a policy might place the new arrivals at risk of contracting COVID-19, but it didn't cause Mr. Pack's COVID-19 infection. Because Mr. Pack has pointed to no specific policy of Wexford that injured him, he can't proceed against Wexford.

Mr. Pack also sued Grievance Specialist John Harvil for his role in processing grievances. Mr. Pack has no constitutional right to access the grievance process. *See* Grieveson v. Anderson, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, Mr. Pack can't proceed against Grievance Specialist Harvil.

Mr. Pack has also sued eight correctional officers for failure to intervene when social distancing guidelines weren't implemented in the chow hall. Even if the allegations related to these officers stated a claim on which relief could be granted – a question the court need not address - he couldn't proceed against unnamed members of the prison's staff. *See* Wudtke v. Davel, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.").

Finally, Mr. Pack asserts various claims based on Indiana law, including negligence and intentional or negligent infliction of emotional distress. Each of the defendants was acting within the scope of their employment during the alleged wrongdoing, so the Indiana Tort Claims Act bars any state law claims against them personally. *See* I.C. § 34-13-3-5(b) "Under the Indiana Tort Claims Act, there is no

8

remedy against the individual employee so long as he was acting within the scope of his employment." Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014). *See also* Katz-Crank v. Haskett, 843 F.3d 641, 648 (7th Cir. 2016) ("Indiana Tort Claims Act confers on public employees a broad immunity from suit for acts committed within the scope of their employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." Reiner v. Dandurand, 33 F.Supp.3d 1018, 1033 (N.D. Ind. 2014) (quotations and citations omitted). Furthermore, before a tort claim can proceed in court against an employee of the State of Indiana, the plaintiff must file a notice of tort claim as required by the Indiana Tort Claims Act. *See* Indiana Code § 34-13-3-6 and Poole v. Clase, 476 N.E.2d 828 (Ind. 1985). Mr. Pack doesn't mention filing a tort claim notice and it's not plausible to infer that he did. He can't proceed on his state law claims.

For these reasons, the court:

(1) GRANTS Elvis Aaron Pack leave to proceed against Dorothy Livers in her individual capacity for compensatory and punitive damages for deliberate indifference to Mr. Pack's medical needs while infected with COVID-19 in late April 2020 or early May 2020, in violation of the Eighth Amendment;

(2) GRANTS Mr. Pack leave to proceed against Warden John Galipeau in his individual capacity for compensatory and punitive damages for deliberate indifference to Mr. Pack's safety by knowingly placing numerous inmates that were

COVID-19 positive in general population prior to Mr. Pack contracting COVID-19 in mid-April 2020, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Warden Tom Hanlon, Wexford Medical of Indiana, John Harvil, and 8 unknown correctional officers;

(5) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Dorothy Livers at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(6) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Warden John Galipeau at the Indiana Department of Correction with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS Indiana Department of Correction and Wexford of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dorothy Livers and Warden John Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 8, 2021

                                                      s/ Robert L. Miller, Jr.  
                                                      JUDGE  
                                                      UNITED STATES DISTRICT COURT