UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELVIS PACK, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-491-RLM-MGG |
| JOHN GALIPEAU, et al., | |
| Defendants. | |

OPINION AND ORDER

Elvis Pack, a prisoner without a lawyer, is proceeding in this case on two claims. First, he is proceeding "against Dorothy Livers in her individual capacity for compensatory and punitive damages for deliberate indifference to Mr. Pack's medical needs while infected with COVID-19 in late April 2020 or early May 2020, in violation of the Eighth Amendment[.]" ECF 12 at 9. Second, he is proceeding "against Warden John Galipeau in his individual capacity for compensatory and punitive damages for deliberate indifference to Mr. Pack's safety by knowingly placing numerous inmates that were COVID-19 positive in general population prior to Mr. Pack contracting COVID-19 in mid-April 2020, in violation of the Eighth Amendment[.]" *Id.* at 9-10. Nurse Livers and Warden Galipeau filed separate motions for summary judgment. ECF 91, 95. With the motions, the defendants provided Mr. Pack the notice required by N.D. Ind. L.R. 56-1(f). ECF 94, 98. Attached to the notices were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Under Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. These deadlines passed more than two months ago, but Mr. Pack hasn't responded. The court will now rule on the defendants' summary judgment motions.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, prison officials have a duty to ensure inmates receive constitutionally adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish liability for an Eighth Amendment violation, a prisoner must

show: (1) his medical need was objectively serious; and (2) the defendants acted with deliberate indifference to his medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005).

Warden Galipeau

Mr. Pack is proceeding against Warden Galipeau for acting with deliberate indifference to his safety by "knowingly placing numerous inmates that were COVID-19 positive in general population prior to Mr. Pack contracting COVID-19 in mid-April 2020[.]" ECF 12 at 9-10. Warden Galipeau argues summary judgment is warranted in his favor because he didn't knowingly place any inmate who was COVID-19 positive in Mr. Pack's vicinity.

Warden Galipeau submits an affidavit[1] in which he attests to these facts: As the COVID-19 pandemic unfolded in 2020, Warden Galipeau implemented quarantine and sanitation procedures at Westville Correctional Facility to stem the spread of COVID-19. ECF 92-1 at 1. Specifically, Warden Galipeau implemented procedures authorized by the Indiana government in accordance with the Center for Disease Control. *Id.* at 1-2; ECF 92-2. Pursuant to these procedures, all inmates arriving at WCF underwent a COVID-19 screening process that included testing and extended monitoring. ECF 92-1 at 2. At all times, the facility's qualified medical personnel conducted the screening process. *Id.* Incoming offenders who tested positive for COVID-19 or were known to be previously exposed to COVID-19 were immediately quarantined for fourteen days in a single-cell housing unit in D-Pod. *Id.* Any WCF inmate who showed symptoms of COVID-19 would also be subjected to the facility's COVID-19 testing and quarantine protocols. *Id.* Warden Galipeau isn't personally involved in the COVID-19 testing or treatment process, but defers to the decisions of his medical staff. *Id.* at 2-3. Warden Galipeau isn't involved in the decision-making related to which offenders are transferred within the facility, but rather defers these decisions to the facility's classification personnel. *Id.* at 3. WCF's records indicate only two inmates were transferred to O-dorm, where Mr. Pack was housed, during the month of April 2020. ECF 92-1 at 4; ECF 94-3. Warden Galipeau

---

[1] Because Mr. Pack didn't respond to the summary judgment motions, the Court accepts the facts alleged in Warden Galipeau's affidavit as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .").

4

has no knowledge of the COVID-19 status of these two inmates, and didn't knowingly transfer any inmate who was positive or exposed to COVID-19 into Mr. Pack's dorm. ECF 92-1 at 4.

Because it is undisputed that Warden Galipeau (1) implemented and followed procedures to contain and prevent the spread of COVID-19 at WCF, and (2) never knowingly transferred any inmate who had tested positive or been exposed to COVID-19 into Mr. Pack's dorm, no reasonable jury could conclude that Warden Galipeau was deliberately indifferent to Mr. Pack's safety. Summary judgment for Warden Galipeau is warranted.

## Nurse Livers

Mr. Pack is proceeding against Nurse Livers for deliberate indifference to his medical needs while he was infected with COVID-19 in late April 2020 or early May 2020. ECF 12 at 9. Nurse Livers argues summary judgment is warranted in her favor because she wasn't deliberately indifferent to Mr. Pack's health or safety.

Nurse Livers submits an affidavit and Mr. Pack's medical records, which show this:[2] Nurse Livers was employed as the Healthcare Services Administrator at WCF during all relevant times. ECF 97-1 at 2. As HSA, Nurse Livers' job duties include administrative work, responding to grievances, and working with other department heads to ensure patient care is delivered. *Id.* at 2-3. Nurse Livers doesn't personally

---

[2] The court accepts these facts as undisputed.

5

provide medical treatment to inmates, but rather ensures that inmates' medical needs are addressed by appropriate staff. *Id.* at 3, 8.

On April 20, 2020, Nurse Livers received an order from Dr. Liaw to administer a "rapid-Covid test" to Mr. Pack. ECF 97-1 at 4, 254. Nurse Livers completed the test, which was positive, and notified the doctor of the positive result. *Id.* Mr. Pack was moved into quarantine from April 20, 2020, until May 11, 2020. *Id.* at 7.

Nurse Livers attests that, Mr. Pack never exhibited any signs of symptoms of COVID-19 that would have demanded immediate medical attention while he was quarantined. ECF 97-1 at 6-7. He submitted only one request for healthcare during this time period, which asked for his back brace and didn't request treatment for any COVID-19 related symptoms. *Id.* at 5, 7, 129. Mr. Pack submitted a grievance on May 6, 2020, complaining generally that he hadn't received any medical treatment since testing positive for COVID-19, but that grievance didn't describe or allege that he was experiencing any symptoms related to COVID-19. *Id.* at 4-5, 44. In response to this grievance, Nurse Livers sent Nurse Joshua Kuiper to perform a wellness check on Mr. Pack. *Id.* at 5, 252-53. Mr. Pack reported that he felt fine, didn't report any issues or complaints, and his vitals yielded normal results. *Id.* Because the wellness check demonstrated Mr. Pack had no symptoms of COVID-19, he was released from quarantine later that day and returned to general population. *Id.* Medical staff saw Mr. Pack numerous times throughout June and July 2020, including for chronic care visits and his annual wellness encounter, but never complained of any lingering COVID-19 symptoms. *Id.* at 7. Nurse Livers attests that Mr. Pack never

6

demonstrated or complained of any COVID-19 symptoms that required medical treatment, and that if he had requested treatment for any COVID-19 related symptoms, he would have received treatment. *Id.*

The undisputed facts show Mr. Pack never complained to or requested treatment from Nurse Livers for any symptoms related to COVID-19. Mr. Pack submitted one grievance complaining generally of a lack of treatment, and was seen in response by a nurse who found he had no symptoms or complaints. In her capacity as Healthcare Services Administrator, Nurse Livers doesn't personally provide medical treatment to inmates, but rather responds to their grievances and healthcare requests by ensuring they are seen by medical staff and provided adequate treatment. With no evidence Mr. Pack ever requested treatment from Nurse Livers or informed Nurse Livers he was experiencing any symptoms, no reasonable jury could conclude Nurse Livers was deliberately indifferent to Mr. Pack's health or safety. Summary judgment is warranted in her favor.[3]

Accordingly, the court:

(1) GRANTS Warden Galipeau's motion for summary judgment (ECF 91);

(2) GRANTS Nurse Livers' motion for summary judgment (ECF 95); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and against Elvis Pack and to close this case.

---

[3] Because no jury could find on this record that Nurse Livers was deliberately indifferent to Mr. Pack's health or safety, the court need not reach her alternative arguments that she is entitled to qualified immunity and that Mr. Pack did not suffer any objectively serious medical condition.

SO ORDERED on May 25, 2023

                                          /s/ Robert L. Miller, Jr.
                                          JUDGE
                                          UNITED STATES DISTRICT COURT